**RECEIVED**

2018 JAN 31 P 2020

AT 8:30_____M
WILLIAM T. WALSH, CLERK

**FILED**

JAN 3 1 2020

AT 8:30_____ 3⁴⁰ PM
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Hon. (KM) |
| | : | |
| | : | Crim. No. 20-111 |
| v. | : | |
| | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 371 |
| REINALDO WILSON and | : | 18 U.S.C. § 1349 |
| JEAN WILSON | : | 18 U.S.C. § 1956(h) |
| | : | 42 U.S.C. § l320a-7b(b)(1)(B) |
| | : | |

### I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

1.     At all times relevant to this Indictment:

### Individuals and Entities

a.     Defendant REINALDO WILSON was a United States citizen who resided in Bayonne, New Jersey and Richmond Hill, Georgia.

b.     Defendant JEAN WILSON was a United States citizen who resided in Bayonne, New Jersey and Richmond Hill, Georgia.

c.     Person A owned and operated Company A, which was a patient recruiting company that purported to do business in Tampa, Florida and elsewhere.

d.     Person B owned and operated Company B, which was an orthotic brace supplier that purported to do business in New York, New York.

1

e.     Advantage Choice Care, LLC ("ACC") was a New York Limited Liability Company owned and operated by REINALDO WILSON and JEAN WILSON that purported to do business in Bayonne, New Jersey and elsewhere.

f.     Tele Medcare LLC ("Tele Medcare") was a New York Limited Liability Company owned and operated by REINALDO WILSON, JEAN WILSON, and others that purported to do business in Bayonne, New Jersey and elsewhere.

g.     AIM Healthcare PA ("AIM" together with ACC and Tele Medicare, the "ACC Network") was a Maryland Corporation owned and operated by REINALDO WILSON, JEAN WILSON, and others that purported to do business in New Jersey and elsewhere.

h.     REINALDO WILSON, JEAN WILSON, and others owned, controlled, and/or operated the following entities, which were used in the scheme:

| Entity | Date of Incorporation | Incorporation Location |
|---|---|---|
| Choice Care Medical, LLC | March 14, 2017 | New Jersey |
| Southeastern DME, LLC | March 6, 2018 | Florida |
| Medical Advocate Network, LLC | August 28, 2017 | New Jersey |
| R&J Management Services, LLC | June 12, 2018 | Georgia |

**The Medicare Program**

i.     The Medicare program was a federal health care program providing benefits to persons who were 65 years or older, or disabled.

Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.   Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

j.    Medicare was a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

k.    Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

l.    Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment ("DME"), such as Off-The-Shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "Braces").   OTS braces require minimal self-adjustment for appropriate use and do not require expertise in trimming, bending, molding, assembling, or customizing to fit to the individual.

m.   CMS contracted with various companies to receive, adjudicate, process, and pay Medicare Part B claims, including claims for braces.   CMS also contracted with Program Safeguard Contractors, or ZPICs, which are contractors that investigate fraud, waste, and abuse.   As part of an investigation, the Program Safeguard Contractor or ZPIC may conduct a clinical review of medical records to ensure that payment is made only for services that meet all Medicare coverage and medical necessity requirements.

n.      Brace companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers."   To participate in Medicare, providers were required to submit an application in which the providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement.   To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.   Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

o.      If Medicare approved a provider's application, Medicare assigned the provider a Medicare Provider Identification Number ("PIN" or "provider number").   A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.   Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary.   This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

p.      Under Medicare Part B, claims for Braces were required to be reasonable and medically necessary for the treatment or diagnosis of the patient's illness or injury.   Medicare used the term "ordering/referring"

4

provider to identify the physician or nurse practitioner who ordered, referred, or certified an item or service reported in that claim.   Individuals ordering or referring these services were required to have the appropriate training, qualifications, and licenses to provide such services.   A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, the name and identification number of the physician or other health care provider who had ordered the services, and the name and identification number of the Brace provider that had provided the services.   Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

        q.     To be reimbursed from Medicare for Braces, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.   Medicare would not pay claims procured through kickbacks and bribes.

        r.     Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare required complete and accurate patient medical records so that Medicare could verify that the services were provided as described on the claim form.   These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

s.      To receive reimbursement for a covered service from Medicare, a provider submitted a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

**Telemedicine**

t.      Telemedicine provided a means of connecting patients to health care providers by using telecommunications technology, such as video or the telephone.

u.      Telemedicine companies hired physicians and other health care providers to furnish telemedicine services to individuals.   Telemedicine companies typically paid health care providers a fee to conduct consultations with patients.   In order to generate revenue, telemedicine companies typically either billed the Medicare program or other health insurance program, or offered a membership program to customers.

v.      Medicare Part B covered expenses for specified telehealth services if certain requirements were met.   These requirements included (a) that the beneficiary was located in a rural area (outside a Metropolitan Statistical Area or in a rural health professional shortage area); (b) that the services were delivered via an interactive audio and video telecommunications system; and (c) that the beneficiary was at a practitioner's office or a specified type of medical facility – not at a beneficiary's home – during the telehealth service furnished by a remote practitioner.

6

w.      Some telemedicine companies offered membership programs to patients who signed a contract for telemedicine services, paid a set dollar amount per month, and paid a fee each time the customer had a telehealth encounter with a physician.

## COUNT ONE
### (Conspiracy to Defraud the United States and Pay and Receive Kickbacks)

2.      Paragraph 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

3.      From in or around March 2017, and continuing through in or around April 2019, in the District of New Jersey, and elsewhere, the defendants,

REINALDO WILSON and
JEAN WILSON,

did intentionally and knowingly, combine, conspire, confederate, and agree with each other, and others, known and unknown to the Grand Jury, to:

a.      defraud the United States by cheating the United States government and any of its agencies out of money and property, and by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare; and

b.      commit certain offenses against the United States, that is:

i.      to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A)-(B), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly,

7

in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under a Federal health care program; and

          ii.       to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A)-(B), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under a Federal health care program.

## Object of the Conspiracy

4.     It was the object of the conspiracy for defendants REINALDO WILSON, JEAN WILSON, and other co-conspirators to unlawfully enrich themselves by, among other things:   (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the

receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means of the Conspiracy

5.     The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

a.     REINALDO WILSON and JEAN WILSON falsely certified to Medicare that they would comply with all Medicare rules and regulations, and federal laws, including that they would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that they would comply with the Anti-Kickback statute.

b.     REINALDO WILSON and JEAN WILSON created, owned, and/or controlled the ACC Network.

c.     REINALDO WILSON, JEAN WILSON, and others, through the ACC Network, recruited, hired, and paid health care providers, in the District of New Jersey and elsewhere, to order Braces for Medicare beneficiaries.

d.     REINALDO WILSON, JEAN WILSON, and others solicited and received illegal kickbacks and bribes from Person A, Person B, and others in exchange for the ordering, arranging for, and recommending the ordering of Braces for Medicare beneficiaries.

e.     REINALDO WILSON, JEAN WILSON, and others caused the ACC Network to receive Medicare beneficiary information in order for the ACC Network health care providers to sign Brace orders.

9

f.      REINALDO WILSON, JEAN WILSON, and others facilitated ordering of braces by refraining from charging a fee to Medicare beneficiaries or billing Medicare for purported telemedicine consultations conducted by the ACC Network health care providers.

g.      REINALDO WILSON, JEAN WILSON, and others, through the ACC Network, paid health care providers to order Braces for Medicare beneficiaries that were procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

h.      REINALDO WILSON, JEAN WILSON, and others transferred brace orders to Brace providers, Person A, Person B, recruiters, and others to support false and fraudulent claims to Medicare that were submitted by Brace providers, located in the District of New Jersey and elsewhere.

i.      REINALDO WILSON, JEAN WILSON, and others concealed and disguised the payment and receipt of illegal kickbacks and bribes from the United States Department of Health and Human Services by causing them to be paid to the ACC Network indirectly through nominee companies and bank accounts, opened by REINALDO WILSON, JEAN WILSON and others.

j.      REINALDO WILSON, JEAN WILSON, and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of Brace orders and other records all to support claims for Braces that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

k.      REINALDO WILSON, JEAN WILSON, and others also concealed and disguised the scheme from the United States Department of Health and Human Services by entering into sham contracts and agreements, labeling kickback and bribe payments as "medical" and "consultation" expenditures.

l.      REINALDO WILSON, JEAN WILSON, and others caused the Brace providers to submit, and cause the submission of, an amount in excess of $56 million for Brace orders that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.   Medicare paid these Brace providers in excess of $28 million for these claims.

## Overt Acts

6.      In furtherance of the conspiracy and in order to accomplish the objects thereof, REINALDO WILSON, JEAN WILSON, and their co-conspirators committed and caused the commission of the following overt acts in the District of New Jersey and elsewhere:

a.      In or around March 2017, REINALDO WILSON, JEAN WILSON, and others solicited and received an illegal kickback and bribe from Person A, and others in the form of a wire to ACC's bank account ending in x0813 in the approximate amount of $18,000.

b.      In or around July 2017, REINALDO WILSON, JEAN WILSON, and others solicited and received an illegal kickback and bribe from Person A, and others in the form of a wire to ACC's bank account ending in x0813 in the approximate amount of $34,920.

11

c.     In or around December 2018, REINALDO WILSON, JEAN WILSON, and others solicited and received an illegal kickback and bribe from Person A, and others in the form of a wire to AIM's bank account ending in x5326 in the approximate amount of $5,000.

d.     In or around January 2019, REINALDO WILSON, JEAN WILSON, and others solicited and received an illegal kickback and bribe from Person A, and others in the form of a wire to AIM's bank account ending in x5326 in the approximate amount of $3,465.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

7.     Paragraphs 1, and 4 through 6 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

8.     From in or around March 2017, and continuing through in or around April 2019, in the District of New Jersey, and elsewhere, the defendants,

REINALDO WILSON, and
JEAN WILSON

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title

18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, 1347; and

b.      to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, contrary to Title 18, United States Code, Section 1343.

## Object of the Conspiracy

9.      It was the object of the conspiracy for REINALDO WILSON, JEAN WILSON, and other co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and

13

transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means of the Conspiracy

10.    The manner and means by which the REINALDO WILSON, JEAN WILSON, and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

a.    REINALDO WILSON and JEAN WILSON falsely certified to Medicare that they would comply with all Medicare rules and regulations, and federal laws, including that they would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare and that they would comply with the Anti-Kickback statute.

b.    REINALDO WILSON and JEAN WILSON created, owned, and/or controlled the ACC Network.

c.    REINALDO WILSON, JEAN WILSON, and others, through the ACC Network, recruited, hired, and paid health care providers, in the District of New Jersey and elsewhere, to order Braces for Medicare beneficiaries.

d.    REINALDO WILSON, JEAN WILSON, and others solicited and received illegal kickbacks and bribes from Person A, Person B, and others in exchange for the ordering, arranging for, and recommending the ordering of Braces for Medicare beneficiaries.

e.    REINALDO WILSON, JEAN WILSON, and others caused the ACC Network to receive Medicare beneficiary information in order for the ACC Network health care providers to sign Brace orders.

14

f.      REINALDO WILSON, JEAN WILSON, and others facilitated ordering of braces by refraining from charging a fee to Medicare beneficiaries or billing Medicare for purported telemedicine consultations conducted by the ACC Network health care providers.

g.      REINALDO WILSON, JEAN WILSON, and others, through the ACC Network, paid health care providers to order Braces for Medicare beneficiaries that were procured through the payment of kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

h.      REINALDO WILSON, JEAN WILSON, and others transferred brace orders to Brace providers, Person A, Person B, recruiters, and others to support false and fraudulent claims to Medicare that were submitted by Brace providers, located in the District of New Jersey and elsewhere.

i.      REINALDO WILSON, JEAN WILSON, and others concealed and disguised the payment and receipt of illegal kickbacks and bribes from the United States Department of Health and Human Services by causing them to be paid to the ACC Network indirectly through nominee companies and bank accounts, opened by REINALDO WILSON, JEAN WILSON, and others.

j.      REINALDO WILSON, JEAN WILSON, and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of Brace orders and other records all to support claims for Braces that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

k.      REINALDO WILSON, JEAN WILSON, and others also concealed and disguised the scheme from the United States Department of Health and Human Services by entering into sham contracts and agreements, labeling kickback and bribe payments as "medical" and "consultation" expenditures.

l.      REINALDO WILSON, JEAN WILSON, and others caused the Brace providers to submit, and cause the submission of, an amount in excess of approximately $56 million for Brace orders that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.   Medicare paid these Brace providers approximately in excess of $28 million for these claims.

m.      REINALDO WILSON, JEAN WILSON, and others, through the use of interstate wires, caused Medicare to make payments for services that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

In violation of Title 18, United States Code, Section 1349.

**COUNTS THREE THROUGH FIVE**
**(Soliciting and Receiving of Health Care Kickbacks)**

11.     Paragraphs 1, 4 through 6, 7, and 8 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

12.     On or about the dates set forth below, in the District of New Jersey, and elsewhere, the defendants,

REINALDO WILSON and
JEAN WILSON

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a federal health care program, as defined by 42 U.S.C. § 1320a-7b(f), namely, Medicare, as follows:

| Count | Date | Originating Account | Payee | Amount |
|-------|------|---------------------|-------|--------|
| 3 | March 17, 2017 | Company A | ACC | $18,000 |
| 4 | July 17, 2017 | Company A | ACC | $34,920 |
| 5 | December 10, 2018 | Company B | AIM | $5,000 |

In violation of 42 U.S.C. § 1320a-7b(b)(1)(B) and 18 U.S.C. § 2.

## COUNT SIX
## (Conspiracy to Commit Money Laundering)

13.     Paragraphs 1, 4 through 6, 7, and 8 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

14.     From in or around March 2017 through in or around the April 2019, in the District of New Jersey, and elsewhere, the defendants,

REINALDO WILSON and
JEAN WILSON

did knowingly, combine, conspire, confederate, and agree with each other, and others known and unknown, to commit certain offenses against the United States in violation of Title 18, United States Code, Section 1956, that is: to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000 and such property having been derived from a specified unlawful activity, that is, conspiracy to defraud the United States and pay and receive kickbacks relating to a health care benefit program, namely, Medicare, in violation of Title 18, United States Code, Section 371, and conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, contrary to Title 18, United States Code, Section 1957.

In violation of Title 18, United States Code, Section 1956(h).

## **FORFEITURE ALLEGATION**
### **(Counts One, Three, Four, and Five)**

15.     Upon conviction of one or more of the Federal health care offenses as defined in 18 U.S.C. § 24 alleged in Counts One, Three, Four, and Five of this Indictment, the defendants,

REINALDO WILSON and
JEAN WILSON

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense, and all property traceable to such property.

## **FORFEITURE ALLEGATION**
### **(Count Two)**

16.     Upon conviction of the conspiracy offense in violation of 18 U.S.C. § 1349 alleged in Count Two of this Indictment, the defendants,

REINALDO WILSON and
JEAN WILSON

shall forfeit to the United States:

a.     As to the conspiracy to violate 18 U.S.C. § 1347, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to violate 18 U.S.C. § 1347, and all property traceable to such property; and

b.     As to the conspiracy to violate 18 U.S.C. § 1343, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the defendants obtained that constitutes or is derived from proceeds

traceable to the commission of the conspiracy to violate 18 U.S.C. § 1343, and all property traceable to such property.

## FORFEITURE ALLEGATION
### (Count Six)

17.    Upon conviction of the money laundering conspiracy offense in violation of 18 U.S.C. § 1956(h) alleged in Count Six of this Indictment, the defendants,

REINALDO WILSON and
JEAN WILSON

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property, real and personal, involved in the money laundering conspiracy offense, and all property traceable to such property.

## Substitute Assets Provision
### (Applicable to All Forfeiture Allegations)

18.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

c.    cannot be located upon the exercise of due diligence;

d.    has been transferred or sold to, or deposited with, a third person;

e.    has been placed beyond the jurisdiction of the Court;

f.    has been substantially diminished in value; or

g.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(b), to seek forfeiture of any other property of defendants REINALDO WILSON and JEAN WILSON up to the value of the forfeitable property described above.

A True Bill,

Foreperson

RACHAEL A. HONIG
Attorney for the United States,
Acting Under Authority Conferred
By 28 U.S.C. § 515

ALLAN MEDINA
Chief, Healthcare Fraud Unit
Criminal Division, Fraud Section

DARREN C. HALVERSON
Trial Attorney
Criminal Division, Fraud Section

CASE NUMBER: 20-111 (KM)

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

REINALDO WILSON and JEAN WILSON

INDICTMENT FOR

18 U.S.C. § 371, 18 U.S.C. § 1349, 42 U.S.C. § 1320a-7b(b)(1)(B),
18 U.S.C. § 2, and 18 U.S.C. § 1956(h)

A True Bill,

Foreperson

RACHAEL A. HONIG
Attorney for the United States, Acting Under Authority Conferred By 28 U.S.C. § 515
FOR THE DISTRICT OF NEW JERSEY

DARREN C. HALVERSON
TRIAL ATTORNEY
NEWARK, NEW JERSEY
202-880-2233